# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| DANNY VANDIVER, Individually and on Behalf of Others Similarly Situated,<br><br>　Plaintiff,<br><br>v.<br><br>ANADARKO PETROLEUM CORPORATION<br><br>　Defendant. | Case No.: _____<br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Danny Vandiver (Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Anadarko Petroleum Corporation (Anadarko) under the Fair Labor Standards Act (FLSA).

2. Plaintiff worked for Anadarko as an Inspector.

3. Plaintiff worked for Anadarko through worked through Bergaila & Associates, Inc. (Bergaila).

4. Anadarko did not pay Plaintiff and its other Inspectors overtime as required by the FLSA.

5. Instead of paying overtime as required by the FLSA, Plaintiff and its other Inspectors were paid a flat daily rate for all hours worked in a workweek, including those in excess of 40 in a workweek.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to those Inspectors who worked for Anadarko during the relevant period.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Anadarko maintains its corporate headquarters in this District and Division.

## PARTIES

9. Plaintiff worked for Anadarko as a Mechanical Inspector from approximately February 2019 to June 2020.

10. Throughout his employment, Plaintiff was staffed to Anadarko by Bergaila.

11. Throughout his employment with Anadarko, Plaintiff was paid a flat daily rate for all the hours he worked including those in excess of 40 in a workweek ("day rate pay plan").

12. Plaintiff's consent to be a party plaintiff is attached as Exhibit 1.

13. Plaintiff brings this FLSA collective action on behalf of himself and all other similarly situated Inspectors who were paid pursuant to Anadarko's day-rate compensation plan. These Inspectors were paid a flat amount for each day worked for Anadarko and did not receive overtime compensation for all the hours they worked in excess of 40 hours each week in violation of the FLSA.

14. The FLSA class of similarly situated employees Plaintiff seeks to represent consists of:

> **All Day Rate Inspectors employed by, or working on behalf of, Anadarko in the United States and paid a day rate pay at any time during the last 3 years** (the "Day Rate Inspectors").

15. Members of the proposed collective can be readily ascertained from Anadarko's records.

16. Anadarko is a Delaware corporation with its headquarters in Houston, Texas.

17. Anadarko may be served with process by serving its registered agent for service of process: C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## FLSA Coverage

18. At all times hereinafter mentioned, Anadarko was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Anadarko was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all relevant times, Anadarko has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

21. At all relevant times, Anadarko has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, hard hats, smart phones/devices, computers, etc.) that have been moved in or produced for commerce.

22. In each of the past three years, Anadarko's annual gross volume of sales has exceeded $500,000.

23. At all relevant times, Plaintiff and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

24. Anadarko uniformly applied its policy of paying its Day Rate Inspectors, including Plaintiff, a day rate with no overtime compensation.

25. At all relevant times hereinafter mentioned, Anadarko treated Plaintiff and the Day Rate Inspectors as employees and uniformly applied their day-rate pay practice to Plaintiff and the Day Rate Inspectors.

26. Whether Anadarko did not consider Plaintiff and the Day Rate Inspectors as its employees does not alter their status as employees for purposes of this FLSA collective action.

27. Anadarko applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

28. By paying its Day Rate Inspectors a day rate with no overtime compensation, Anadarko violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

29. As a result of this policy, Plaintiff and the Day Rate Inspectors do not receive overtime as required by the FLSA.

30. The uniform compensation scheme of paying its Day Rate Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

31. Anadarko treated all their Day Rate Inspectors (including Plaintiff) as employees by setting their work schedules, controlling their job assignments, withholding taxes from their pay, and maintaining their personnel records.

## FACTS

32. Occidental Petroleum Corporation acquired Anadarko in 2019.

33. Prior to this acquisition, Anadarko was one of the largest independent oil and natural gas exploration and production companies in the world, operating throughout the United States, including in Texas.

34. To achieve its business objectives, Anadarko hires personnel (like Plaintiff) to perform inspection services on its behalf.

35. Plaintiff and the Day Rate Inspectors performed inspection services for Anadarko.

36. As a Mechanical Inspector, Plaintiff was responsible for inspecting gas pipelines, repairing inline liquid containers, and communicating and providing inspection reports to Anadarko.

37. Plaintiff would inspect parts, assembling parts, welding inspection, and assist in installations onsite and at the well per Anadarko.

38. Anadarko relies on Plaintiff and the Day Rate Inspectors to ensure the safe transportation of goods in interstate commerce.

39. Anadarko's goods include oil and gas which travel through pipelines across state lines.

40. Plaintiff and the Day Rate Inspectors were responsible for the safe transportation of Anadarko's goods through their job duties of inspecting elements of the pipeline infrastructure.

41. Plaintiff and the Day Rate Inspectors traveled interstate to perform their duties of inspecting elements of the pipeline infrastructure.

42. For example, Plaintiff worked for Anadarko in Texas, Oklahoma, Arkansas, and Kansas.

43. Plaintiff and the Day Rate Inspectors used tools, equipment, and consumables in their work interstate on oil and gas pipeline and related infrastructure.

44. Plaintiff and the Day Rate Inspectors are involved in the building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

45. Plaintiff and the Day Rate Inspectors use their vehicles to perform essential aspects of their inspection related job duties.

46. Plaintiff and the Day Rate Inspectors use their vehicles to carry tools, equipment, and consumables that are used on the oil and gas transportation network of pipelines and related infrastructure.

47. Plaintiff and the Day Rate Inspectors work alongside other workers who are themselves engaged in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

48. Anadarko cannot operate pipelines and allow their goods to travel within interstate commerce without the job duties performed by Plaintiff and the Day Rate Inspectors.

49. Plaintiff and the Day Rate Inspectors are essential to Anadarko's operations.

50. Pipelines exist as a conduit, much like roads or railways, to allow goods to enter and take part in interstate commerce.

51. Plaintiff and the Day Rate Inspectors duties are vital to allowing oil and gas to travel from the oil and gas fields to refineries.

52. Anadarko's entire industry is related to the exploration, production, and transportation of oil and gas goods.

53. Plaintiff and the Day Rate Inspectors are regularly a part of interstate commerce.

54. Plaintiff and the Day Rate Inspectors operate vehicles that are crossing state lines.

55. Plaintiff and the Day Rate Inspectors operate vehicles with a gross vehicle weight rating of 10,000 lbs or less.

56. Plaintiff and the Day Rate Inspectors contribute to and/or facilitate the movements of Anadarko's goods in interstate commerce.

57. Plaintiff and the Day Rate Inspectors job duties directly relate to the safe transportation of Anadarko's goods.

58. If Plaintiff and the Day Rate Inspectors do not perform their job duties correctly, the pipelines and infrastructure used by Anadarko could explode, causing serious personal and financial harm.

59. Throughout his employment with Anadarko, Plaintiff was paid on day rate basis.

60. On a day-to-day basis Plaintiff and the Day Rate Inspectors reported to and took their working orders from Anadarko.

61. Anadarko's Day Rate Inspectors, including Plaintiff, regularly worked more than 40 hours a week.

62. Indeed, Anadarko's Day Rate Inspectors often worked 12 hour shifts for 6 to 7 days per week.

63. For example, Anadarko directed Plaintiff to work 12 or hour shifts for up to a week at a time.

64. Anadarko, through its staffing companies, paid all their Day Rate Inspectors pursuant to their day rate pay plan with no additional compensation for overtime hours regardless of the number of hours worked that workweek.

65. Plaintiff and the Day Rate Inspectors do and did not receive a salary.

66. If Plaintiff and the Day Rate Inspectors did not work, they did not get paid.

67. Plaintiff and the Day Rate Workers received a day rate.

68. Plaintiff and the Day Rate Workers did not receive overtime pay.

69. This is true despite the fact that Plaintiff and the Day Rate Workers regularly worked more than 12 hours a day, 7 days a week.

70. Plaintiff and the Day Rate Workers received the same daily rate each day regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

71. Plaintiff and the Day Rate Workers were not paid on a salary basis.

72. Plaintiff and the Day Rate Workers do not, and never have, received guaranteed weekly compensation from Anadarko irrespective of the number of days they worked (e.g., the only compensation they received is the day rate assigned by Anadarko for all hours worked in a single day).

73. Plaintiff and the Day Rate Workers work in accordance with the schedule set by Anadarko.

74. Plaintiff's work schedule is typical of the other Day Rate Inspectors' schedules.

75. Anadarko controls Plaintiff and the other Day Rate Inspectors' pay.

76. Likewise, Anadarko controls Plaintiff and the Day Rate Workers' work.

77. Anadarko requires Plaintiff and the Day Rate Workers to follow its policies and procedures.

78. Plaintiff and the Day Rate Workers' work must adhere to the quality standards put in place by Anadarko.

79. Plaintiff and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

80. Very little skill, training, or initiative was required of Plaintiff and the Day Rate Inspectors to perform their job duties.

81. Virtually every job function was pre-determined by Anadarko, including the tools and equipment to use at a jobsite, the data to compile, the schedule of work, and other related work duties.

82. Plaintiff and the Day Rate Inspectors were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Anadarko's policies, procedures, and directives.

83. Plaintiff and the Day Rate Inspectors performed routine job duties that were largely dictated by Anadarko.

84. The work Plaintiff and the Day Rate Workers perform is an essential part of Anadarko's core business.

85. During Plaintiff's employment with Anadarko, Anadarko exercised control over all aspects of his job like an employee.

86. Anadarko did not require any substantial investment by Plaintiff for him to perform the work required of him.

87. More often than not, Plaintiff and the Day Rate Inspectors utilized equipment provided by Anadarko to perform their job duties.

88. Plaintiff and the Day Rate Inspectors did not provide the equipment they worked with on a daily basis. Anadarko made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which they worked.

89. Plaintiff and the Day Rate Inspectors did not incur operating expenses like rent, payroll, marketing, and insurance.

90. Plaintiff and the Day Rate Inspectors were economically dependent on Anadarko during their employment with Anadarko.

91. Anadarko controlled Plaintiff's opportunity for profit and loss by dictating the days and hours he worked and the rate and manner he was paid.

92. Plaintiff and the Day Rate Inspectors' earning opportunity was based on the number of days Anadarko scheduled them to work.

93. Anadarko set Plaintiff and the Day Rate Inspectors' rates of pay, their work schedule, and effectively prevented (or outright prohibited) them from working other jobs for other companies while they worked on jobs for Anadarko.

94. Throughout his employment, Anadarko controlled all of the significant or meaningful aspects of the job duties Plaintiff performed.

95. Anadarko exercised control over the hours and locations Plaintiff worked, the tools and equipment he used, and the rate of pay he received.

96. Plaintiff and the Day Rate Inspectors were not employed by Anadarko on a project-by-project basis.

97. In fact, Plaintiff was regularly on call for Anadarko and was expected to drop everything and work whenever needed.

98. Plaintiff worked for Anadarko as a Mechanical Inspector from February 2019 to June 2020.

99. Anadarko's records reflect the hours Plaintiff worked each workweek and pay period.

100. Plaintiff and the Day Rate Inspectors perform similar construction inspection duties for Anadarko.

101. At all relevant times, Anadarko maintained control over Plaintiff and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

102. Plaintiff and the Day Rate Inspectors do not have the power to hire or fire any employees.

103. Plaintiffs' working relationship with Anadarko is similar to Anadarko's relationship with its other Day Rate Inspectors.

104. All of Anadarko's Day Rate Inspectors perform duties like those Plaintiff performed including inspecting horizontal gas pipelines, repairing inline liquid containers, and communicating and providing inspection reports to Anadarko personnel.

105. The Day Rate Inspectors all worked similar hours and were denied overtime as a result of the same illegal day rate pay plan.

106. All of Anadarko's Day Rate Inspectors regularly worked in excess of 40 hours in a workweek.

107. Anadarko knew Plaintiff and the Day Rate Inspectors regularly worked more than 40 hours in a week.

108. Instead of paying the Day Rate Inspectors overtime, they were only paid a flat daily rate for all hours worked, including those in excess of 40 in a workweek.

109. As a result, Anadarko failed to pay the Day Rate Inspectors proper overtime compensation for hours worked in excess of 40 in a workweek.

110. Anadarko knew, or showed reckless disregard for, whether the Day Rate Workers were entitled to overtime under the FLSA.

111. Anadarko has been sued for this same day rate pay practice before.

112. Nonetheless, Plaintiff and the Day Rate Inspectors were not paid overtime for while working for Anadarko.

113. Anadarko was aware of the requirements of the FLSA.

114. Anadarko did not investigate the legality of its classification of Plaintiff and the Day Rate Inspectors as exempt from overtime pay or if they were Anadarko's employees.

115. Anadarko did not review the job descriptions of Plaintiff and the Day Rate Inspectors.

116. Anadarko did not conduct any time studies of the exempt and non-exempt job duties performed by Plaintiff and the Day Rate Inspectors.

117. Anadarko was aware of Plaintiff and the Day Rate Inspectors job duties.

118. Anadarko was aware of Plaintiff and the Day Rate Inspectors primary duties.

119. Anadarko was aware of Plaintiff and the Day Rate Inspectors hours worked.

120. Anadarko was aware Plaintiff and the Day Rate Inspectors worked in excess of 40 hours in a workweek.

121. Anadarko recklessly disregarded its FLSA obligations by employing Plaintiff and the Day Rate Inspectors on a day rate basis.

122. Anadarko willfully violated the FLSA.

## FLSA Violations

123. Anadarko's day rate pay plan violates the FLSA because Plaintiff and the other Day Rate Inspectors did not receive overtime pay for the hours they worked over 40 hours in a week.

124. Anadarko knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

125. Anadarko's failure to pay overtime compensation to the Day Rate Inspectors was not based on any reasonable interpretation of the law.

126. Nor was Anadarko's decision not to pay overtime made in good faith.

127. Accordingly, Plaintiff and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

## Collective Action Allegations

128. Numerous employees have been denied overtime by Anadarko's day rate pay plan.

129. From his observations and experience working for Anadarko, Plaintiff is aware that Anadarko's illegal practices or policies have been imposed on the Day Rate Inspectors.

130. The Day Rate Inspectors all regularly worked in excess of 40 hours per week and received only their flat daily rates for all hours worked.

131. These employees are similarly situated to Plaintiff in terms of *relevant* job duties, pay provisions, and employment practices.

132. Anadarko's failure to pay overtime as required by the FLSA results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Day Rate Inspectors.

133. Thus, Plaintiff's experiences are typical of the experiences of the Day Rate Inspectors.

134. The specific job titles or precise job locations of the various Day Rate Inspectors do not prevent collective treatment.

135. Plaintiff has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Plaintiff has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

136. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

137. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Anadarko will reap the unjust benefits of violating the FLSA.

138. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective.

139. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

140. All Day Rate Inspectors, regardless of their precise job requirements or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

## JURY DEMAND

141. Plaintiff demands a trial by jury.

## RELIEF SOUGHT

142. Wherefore, Plaintiff prays for:

(a) an order allowing Plaintiff's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Inspectors;

(b) judgment finding Anadarko in violation of the FLSA;

(c) judgment finding Anadarko liable to Plaintiff and the Day Rate Inspectors for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding Plaintiff and the Day Rate Inspectors reasonable attorney's fees and costs of this action;

(e) judgment awarding Plaintiff and the Day Rate Inspectors pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**Richard M. Schreiber**
Texas Bar No. 24056278
Federal ID No. 705430
**Josephson Dunlap LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**